UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 1:24-cv-21922

RACHEL CROTEAU,

    Plaintiff,

v.

CARNIVAL CORPORATION,

    Defendant.
_____/

**COMPLAINT FOR DAMAGES
AND DEMAND FOR TRIAL BY JURY**

Plaintiff, RACHEL CROTEAU (hereinafter "CROTEAU"), through undersigned counsel, sues Defendant, CARNIVAL CORPORATION, (hereinafter "CARNIVAL"), and demands trial by jury, stating as follows:

**PARTIES AND JURISDICTION**

1. CROTEAU seeks damages in excess of $75,000.00, exclusive of interest, costs, and attorneys' fees.

2. This Court has admiralty and maritime jurisdiction pursuant to 28 U.S.C. § 1333.

3. This Court has diversity jurisdiction pursuant to 28 U.S.C. § 1332, as the matter in controversy exceeds the sum or value of $75,000.00, exclusive of interest and costs, and is between citizens of different states and/or citizens of a state and citizens or subjects of a foreign state.

4. Suit is filed in federal court because of the federal forum selection clause in the passenger contract ticket issued by CARNIVAL.

5. CROTEAU is *sui juris* and is a resident and citizen of the state of New Hampshire.

6. CARNIVAL is a citizen of the state of Florida and the nations of Panama and the United Kingdom.

7. CARNIVAL is a foreign corporation that is authorized to conduct and that does conduct business in the state of Florida, that at all times material hereto was and is doing business in Miami-Dade County, Florida, and that maintains its corporate headquarters and principal place of business in Miami-Dade County, Florida.

8. CARNIVAL, at all times material hereto, personally and/or through an agent, in Miami-Dade County, Florida, in the Southern District of Florida:

    a. Operated, conducted, engaged in, or carried on a business venture; and/or

    b. Had an office or agency; and/or

    c. Engaged in substantial activity; and/or

    d. Committed one or more of the acts stated in Florida Statutes, §§ 48.081, 48.181 or 48.193.

9. All conditions precedent for filing and maintaining this action have been fulfilled, have been waived, or do not apply.

## **FACTUAL ALLEGATIONS**

10. The photograph below was taken by CROTEAU before her incident, on April 2, 2024, 6:17 P.M., two days after her incident, and it depicts the subject area and the subject surface.

(Photograph on Next Page)



11. At all times material hereto, CARNIVAL owned, leased, chartered, operated, maintained, managed, and/or controlled the subject cruise ship, *the Celebration*.

12. At all times material hereto, CARNIVAL owned, leased, chartered, operated, maintained, managed, and/or controlled the subject area involved in CROTEAU' incident.

13. CROTEAU' incident occurred on or about March 31, 2024, while she was a fare paying passenger on CARNIVAL'S vessel, *the Celebration*.

14. On or about March 31, 2024, between approximately 4:00-5:00 P.M., she was walking by the pizza area on Deck 16, when all of a sudden, she slipped on a clear liquid that was on the unreasonably slippery floor near the hand sanitizer dispenser and fell.

15. As a result, CROTEAU sustained severe injuries that include, but are not limited to, fractures of her upper left arm, and other possible injuries.

16. At all relevant times, the risk-creating and/or dangerous condition was the unreasonably wet and slippery surface.

17. This dangerous condition caused CROTEAU' incident and injuries because it caused her to slip and fall.

18. CARNIVAL either knew or should have known of this risk-creating and/or dangerous condition, due to reasons that include, but are not limited to, the following:

  a. CROTEAU observed CARNIVAL's crewmember in the nearby pizzeria, in the subject area within less than 10 feet of the spot she slipped on, and this crewmember was there prior to when CROTEAU arrived in the area, and this crewmember was in the immediate vicinity, was in viewing distance with direct line of sight to the subject surface, and was close enough to see CROTEAU' incident and the dangerous condition. A reasonable fact finder can infer that this crewmember was or should have

been aware of the dangerous condition and should have warned of and/or removed this condition. This crewmember knew or should have known of the dangerous condition because this crewmember saw the liquid on the subject surface before CROTEAU' incident but did not clean up the area where the incident occurred until after CROTEAU' incident.

b. CARNIVAL participated in the installation and/or design of the subject surface, or alternatively, CARNIVAL accepted the surface with its unreasonably slippery defective design present after having been given an opportunity to inspect the ship and materials on it, including the subject surface, such that CARNIVAL should have known of the unreasonably slippery defective design of the subject surface before providing it for public use.

c. There are relevant safety standards/recommendations/other guidelines regarding the safety of the subject area, including, but not limited to, prohibitions and/or recommendations against walking surfaces such as the surface CROTEAU slipped on having a coefficient of friction or slip resistance below .42, including, but not limited to, A137.1 and B101.3 of the American National Standards Institute (ANSI). Although CROTEAU maintains that the correct industry standard to apply is .60 coefficient of friction and slip resistance when wet, since the subject surface fell below .42, it also fell below .60. CARNIVAL should have known of these standards/recommendations/other guidelines because whether such standards/recommendations/other guidelines are legally required for CARNIVAL to comply with or not, a fact finder is entitled to determine, if it so choses, that these standards/recommendations/other guidelines show what a reasonable cruise line

should have done. In fact, CARNIVAL's own standard for slip resistance required the subject surface, which was both a pool area and a walkway, to be above .42, as seen in CARNIVAL's attached slip resistance standards and ratings table below. Notably, .42 is the lowest acceptable slip resistance out of all of the slip resistance values CARNIVAL permits, so regardless of how CARNIVAL classifies the subject area in the chart below, the subject surface's slip resistance fell below the rating CARNIVAL itself designates for the safety of its passengers.

**Slip Resistance Standards and Rating Table:**
Rev. 0 - 2/29/2016

| Type of Area | Weather Exposed or Interior Space | Examples | Floor Surface Traction Rating. (must meet the minimum Wet Dynamic Coefficient of Friction (WDCF) and at least one of the two other class of ratings (Pendulum Test/R Rating) | | | |
|---|---|---|---|---|---|---|
| | | | Pendulum Test | | R Rating (B=Wet Barefoot Ramp Test) | Wet Dynamic Coefficient of Friction |
| | | | Previous standard. Before JUL. 2014 | New Standard. After JUL. 2014 | | |
| Cabin balconies | weather exposed | | W | P4 | B | > 0.42 |
| Cabin bathrooms | interior | | W | P4 | B | > 0.42 |
| Casual Dining Areas | interior | | X to W | P3-P4 | R10 to R11 | > 0.42 |
| Formal / Specialty Dining Areas | interior | | Z | P0-P1 | R9 | > 0.42 |
| Walkways and pedestrian crossings | interior | | Z | P0-P1 | R9 | > 0.42 |
| Walkways and pedestrian crossings | weather exposed | | X | P3 | R10 | > 0.42 |
| Entrances | interior | Entrances from open decks | X | P3 | R10 | > 0.42 |
| Elevator lobby | interior | | Z | P0-P1 | R9 | > 0.42 |
| Galley / Pantries | interior | | V | P5 | R12 | > 0.42 |
| Ice cream stations | interior | | X to W | P3-P4 | R10-R11 | > 0.42 |
| Ice cream stations | weather exposed | ice cream machine on pool deck | X to W | P3-P4 | R10-R11 | > 0.42 |
| Jogging track | weather exposed | | W | P4 | R11 | > 0.42 |
| Rooms with washing machines using water | interior | Guest laundry rooms | W | P4 | R11 | > 0.42 |
| Pool/Jacuzzi surrounds, Wet Zones, Water Parks | weather exposed | pool deck, whirlpools deck, H2O zone area | W | P4 | B | > 0.42 |
| Public restrooms | interior | all non-cabin restrooms | X | P3 | R10 | > 0.42 |
| Public shower areas | weather exposed | outdoor pool showers | W | P4 | B | > 0.42 |
| Public shower areas | interior | indoor pool and whirlpools showers (covered pools) | W | P4 | B | > 0.42 |
| Ramps | interior | | X | P3 | R10 | > 0.45 |
| Ramps | weather exposed | | W | P4 | R11 | > 0.45 |
| Tiles in front of bar on guest side | | | X to W | P3-P4 | R10-R11 | > 0.45 |
| Serving areas, drink stations, self serve ice machine areas | interior | | X to W | P3-P4 | R10-R11 | > 0.45 |
| Shops | interior | | Z | P0-P1 | R9 | > 0.42 |
| Spa/fitness center changing rooms | interior | locker rooms | W | P4 | B | > 0.42 |
| Sports deck | weather exposed | basketball/volleyball court | X | P3 | R10 | > 0.42 |

d. CARNIVAL also knew or should have known of this dangerous condition through inspecting the subject area involved in CROTEAU' incident, and if it did not know of this dangerous condition, this was because CARNIVAL failed to adequately inspect the subject area prior to CROTEAU' incident.

e. Previous passengers in prior cases suffered prior slip and fall incidents involving the same surface on the same ship and other ships in CARNIVAL'S fleet (including Carnival Cruise Line, Princess Cruises, Holland America Line, Seabourn, P&O

Cruises (Australia), Costa Cruises, AIDA Cruises, P&O Cruises (UK) and Cunard), including, but not limited to *JEANETTE CROTEAU v. CARNIVAL CORPORATION*, Case 1:23-cv-21818-CMA [DE 17 at pp. 3-9] and JOHN STARCEVICH v. CARNIVAL CORPORATION, Case 1:23-cv-21313-CMA [DE 12 at pp. 2-10].

    f. Moreover, CARNIVAL knew or should have known of this dangerous condition for other reasons that will be revealed through discovery.

19. At all times relevant, the subject area was unreasonably dangerous, risk-creating, defective, improperly designed, improperly installed, and/or otherwise unsafe.

20. The subject area and the vicinity lacked adequate safety features to prevent or minimize CROTEAU' incident and/or injuries.

21. The dangerous condition was known, or should have been known, to CARNIVAL in the exercise of reasonable care.

22. The dangerous condition existed for a period of time before the incident.

23. The dangerous condition were not open nor obvious to reasonable passengers, including CROTEAU, and CARNIVAL failed to adequately warn CROTEAU of the danger.

24. At all times relevant, CARNIVAL failed to adequately inspect the dangerous condition. For example, CARNIVAL was required, by its own policies and procedures, to inspect the subject surface in certain intervals of time (such as, for example, every fifteen minutes), to ensure that it was not unreasonably slippery. However, CARNIVAL failed to inspect this surface during the intervals its own policies and procedures required, thereby causing it to be unable to address the dangerous condition prior to CROTEAU' incident.

25. At all times relevant, CARNIVAL had the ability to remedy the dangerous condition, but failed to do so. For example, CARNIVAL could have covered, removed, or blocked off the location of the subject surface that was unreasonably slippery but failed to do so.

26. At all times relevant, CARNIVAL failed to maintain the condition in a reasonably safe condition such that it was not dangerous. For example, CARNIVAL failed to perform regular upkeep on the subject surface, including, but not limited to, by failing to apply and to regularly apply anti-slip/slip resistant material to this surface.

27. At all times relevant, CARNIVAL participated in the design and/or approved the design of the subject area and the vicinity involved in CROTEAU' incident.

28. At all times relevant, CARNIVAL participated in the installation and/or approved the installation of the subject area and the vicinity involved in CROTEAU' incident.

29. The crewmembers of *the Celebration* were in regular full-time employment of CARNIVAL and/or the ship, as salaried crewmembers.

30. CARNIVAL's crewmembers, employees, and/or agents were subject to the ship's discipline and master's orders, and CARNIVAL had the right to hire and fire its crewmembers, employees, and/or agents.

31. CARNIVAL is directly responsible and liable for their actions and the actions of its crewmembers, employees, and/or agents.

32. The crewmembers, including the medical staff, were employees and agents of CARNIVAL, and acted within the course and scope of their employment and/or agency agreement and/or relationship.

## COUNT I
## NEGLIGENT FAILURE TO REMEDY

33. CROTEAU hereby adopts and re-alleges each and every allegation in paragraphs 1-

22 and 24-26 as if set forth herein.

34.  CARNIVAL owed a duty to exercise reasonable care under the circumstances for the safety of its passengers.

35.  This duty includes, but is not limited to, the duty to provide its passengers reasonable care by adequately remedying the dangerous condition.

36.  At all times material, CARNIVAL, through its vessel, crew, agents, employees, staff and/or representatives, who were acting in the course and scope of their employment and/or agency with CARNIVAL, breached the duty of reasonable care owed to CROTEAU and were negligent by failing to adequately remedy the dangerous condition.

37.  CARNIVAL either knew or should have known of this risk-creating and/or dangerous condition, due to reasons that include, but are not limited to, the reasons discussed in paragraph 18.

38.  Moreover, this risk-creating and/or dangerous condition was caused by CARNIVAL'S failure to adequately remedy the dangerous condition.

39.  CARNIVAL'S breach was the cause in-fact of CROTEAU' great bodily harm in that, but for CARNIVAL'S breach CROTEAU' injuries would not have occurred.

40.  Furthermore, the subject area and the vicinity were also on a cruise ship in the water subject to numerous maritime conditions such as the ship's movement, additional wear-and-tear due to maritime conditions not necessarily present on land, waves, and other conditions unique to maritime travel, and as such were "clearly linked to nautical adventure."

41.  CARNIVAL'S breach proximately caused CROTEAU great bodily harm in that the incident that occurred was a foreseeable result of CARNIVAL'S breach.

42.  As a result of CARNIVAL'S negligence, CROTEAU has suffered severe bodily

injuries resulting in pain and suffering, disability, scarring, disfigurement, mental anguish, loss of independence, lost wages, lost earning capacity, loss of capacity for the enjoyment of life, expense of hospitalization, medical and nursing care and treatment, and loss of the value of CROTEAU' vacation, cruise, and transportation costs.

43. The losses are permanent and/or continuing in nature.

44. CROTEAU has suffered these losses in the past and will continue to suffer such losses in the future.

**WHEREFORE**, Plaintiff, RACHEL CROTEAU, demands judgment against Defendant, CARNIVAL CORPORATION, for damages suffered and costs incurred, as well as for damages and costs that CROTEAU will suffer and incur in the future, as a result of his bodily injury, pain and suffering, disability, disfigurement, scarring, mental anguish, hospitalization, medical care and treatment, nursing care and treatment, loss of important bodily functions, loss of independence, lost wages, lost earning capacity, and loss of capacity for the enjoyment of life, for all court costs, pre- and post-judgment interest, and for any and all other relief which this Court deems just or appropriate.

## COUNT II
## NEGLIGENT FAILURE TO WARN OF DANGEROUS CONDITION

45. CROTEAU hereby adopts and re-alleges each and every allegation in paragraphs 1-23 as if set forth herein.

46. At all times relevant, CARNIVAL owed a duty to exercise reasonable care under the circumstances for the safety of its passengers, including CROTEAU.

47. Such duty includes, but is not limited to, the duty that CARNIVAL owes to warn passengers of any dangers that it knew or should have known were not open and obvious to CROTEAU.

48. Such duty also includes, but is not limited to, the duty to warn passengers of hazards, which passengers may reasonably be expected to encounter.

49. At all times material, CARNIVAL, through its vessel, crew, agents, employees, staff and/or representatives, who were acting in the course and scope of their employment and/or agency with CARNIVAL, breached the duty of reasonable care owed to CROTEAU and was negligent by failing to warn CROTEAU of the dangerous condition.

50. Furthermore, CARNIVAL knew or should have known of this dangerous condition for the reasons discussed in paragraph 18.

51. This dangerous condition was also created by CARNIVAL.

52. CARNIVAL failed to adequately ensure there was no dangerous condition that passengers needed to be warned of, and/or CARNIVAL failed to warn CROTEAU despite knowing of the danger.

53. This dangerous condition existed for a period of time before the incident.

54. This dangerous condition was neither open nor obvious to CROTEAU.

55. CARNIVAL'S breach was the cause in-fact of CROTEAU' great bodily harm in that, but for CARNIVAL'S breach CROTEAU' injuries would not have occurred.

56. Furthermore, the subject area and the vicinity were also on a cruise ship in the water subject to numerous maritime conditions such as the ship's movement, additional wear-and-tear due to maritime conditions not necessarily present on land, waves, and other conditions unique to maritime travel, and as such were "clearly linked to nautical adventure."

57. CARNIVAL'S breach proximately caused CROTEAU great bodily harm in that the incident that occurred was a foreseeable result of CARNIVAL'S breach.

58. As a result of CARNIVAL'S negligence, CROTEAU has suffered severe bodily

injuries resulting in pain and suffering, disability, scarring, disfigurement, mental anguish, loss of independence, lost wages, lost earning capacity, loss of capacity for the enjoyment of life, expense of hospitalization, medical and nursing care and treatment, and loss of the value of CROTEAU' vacation, cruise, and transportation costs.

59. The losses are permanent and/or continuing in nature.

60. CROTEAU has suffered these losses in the past and will continue to suffer such loses in the future.

**WHEREFORE**, Plaintiff, RACHEL CROTEAU, demands judgment against Defendant, CARNIVAL CORPORATION, for damages suffered and costs incurred, as well as for damages and costs that CROTEAU will suffer and incur in the future, as a result of his bodily injury, pain and suffering, disability, disfigurement, scarring, mental anguish, hospitalization, medical care and treatment, nursing care and treatment, loss of important bodily functions, loss of independence, lost wages, lost earning capacity, and loss of capacity for the enjoyment of life, for all court costs, pre- and post-judgment interest, and for any and all other relief which this Court deems just or appropriate.

## COUNT III
## NEGLIGENT DESIGN, INSTALLATION, AND/OR APPROVAL OF THE SUBJECT SURFACE AND THE VICINITY

61. CROTEAU hereby adopts and re-alleges each and every allegation in paragraphs 1-22, 25, and 27-28, as if set forth herein.

62. CARNIVAL negligently designed, or in the alternative, approved of the design of the subject area in the following manner: CARNIVAL designed, or in the alternative, approved of the design of the surface CROTEAU slipped on despite the fact that it lacked adequate slip resistance and was under both CARNIVAL's internal slip-resistant and coefficient of friction standard of .42,

as well as the industry standard slip-resistance and co-efficient of friction value of .60, which caused the subject surface to become unreasonably slippery, and which caused CROTEAU to slip and fall.

63. CARNIVAL should have designed the subject area without the defects enumerated above, or in the alternative, should not have approved of the subject area with these defects present. Therefore, CARNIVAL is liable for designing, or in the alternative, approving of the design of the subject area with these defects present.

64. At all times material hereto, CARNIVAL owed a duty to its passengers, and in particular a duty to CROTEAU, not to permit a dangerous condition to be in a place where it could harm passengers, as well as to design and install reasonable safeguards.

65. At all times material hereto, CARNIVAL participated in the design process of the subject vessel by generating design specifications for the shipbuilder to follow, and to put the vessel on which CROTEAU was injured into the channels of trade, and/or CARNIVAL approved of the subject vessel's design, including the design of the subject surface and the vicinity.

66. At all times material hereto, CARNIVAL manufactured, designed, installed, and/or approved of *the Celebration*, including providing specifications to the shipbuilder in the original build process, and/or during its refurbishments, and as such owed a duty to its passengers, and in particular a duty to CROTEAU, to design, install and/or approve of the subject surface such that it was not unreasonably slippery at the time of CROTEAU' incident.

67. At all times material hereto, CARNIVAL through its agents and/or employees who were acting in the course and scope of their employment and/or agency with CARNIVAL, designed, installed, and/or approved of the subject surface and the vicinity involved in CROTEAU' incident, which was also in violation of the applicable industry standards/recommendations and/or

other guidelines.

68. CARNIVAL provides design elements of the vessels to the ship builder and/or approves of design elements which include the subject surface and the vicinity.

69. CARNIVAL maintains the contractual right to participate, review, modify, and/or reject the design plans and drawings of the vessels, including *the Celebration*, during the new build process.

70. CARNIVAL has the right to enter the ship and inspect it during construction to ensure that it is being constructed in accordance with the design specifications and has a right to insist on changes when safety concerns are identified.

71. CARNIVAL has the right to inspect and reject design elements before taking possession of the ship.

72. However, CARNIVAL permitted the dangerous condition to be present in the subject area and the vicinity without correcting these design deficiencies and did not design and install reasonable safeguards.

73. Furthermore, CARNIVAL knew or should have known of the dangerous condition for the reasons discussed in paragraph 18.

74. The design flaws that made the subject surface and the vicinity involved in CROTEAU' incident unreasonably dangerous were the direct and proximate cause of CROTEAU' injuries.

75. CARNIVAL is liable for the design flaws of the vessel, including of the subject surface and the vicinity involved in CROTEAU' incident, which it knew or should have known of.

76. CARNIVAL failed to correct and/or remedy the defective condition, despite the fact that CARNIVAL knew or should have known of the danger.

77. CARNIVAL'S breach was the cause in-fact of CROTEAU' great bodily harm in that, but for CARNIVAL'S breach CROTEAU' injuries would not have occurred.

78. Furthermore, the subject area and the vicinity were also on a cruise ship in the water subject to numerous maritime conditions such as the ship's movement, additional wear-and-tear due to maritime conditions not necessarily present on land, waves, and other conditions unique to maritime travel, and as such were "clearly linked to nautical adventure."

79. CARNIVAL'S breach proximately caused CROTEAU great bodily harm in that the incident that occurred was a foreseeable result of CARNIVAL'S breach.

80. As a result of CARNIVAL'S negligence, CROTEAU has suffered severe bodily injuries resulting in pain and suffering, disability, scarring, disfigurement, mental anguish, loss of independence, lost wages, lost earning capacity, loss of capacity for the enjoyment of life, expense of hospitalization, medical and nursing care and treatment, and loss of the value of CROTEAU' vacation, cruise, and transportation costs.

81. The losses are permanent and/or continuing in nature.

82. CROTEAU has suffered these losses in the past and will continue to suffer such loses in the future.

**WHEREFORE**, Plaintiff, RACHEL CROTEAU, demands judgment against Defendant, CARNIVAL CORPORATION, for damages suffered and costs incurred, as well as for damages and costs that CROTEAU will suffer and incur in the future, as a result of his bodily injury, pain and suffering, disability, disfigurement, scarring, mental anguish, hospitalization, medical care and treatment, nursing care and treatment, loss of important bodily functions, loss of independence, lost wages, lost earning capacity, and loss of capacity for the enjoyment of life, for all court costs,

pre- and post-judgment interest, and for any and all other relief which this Court deems just or appropriate.

## DEMAND FOR JURY TRIAL

Plaintiff, RACHEL CROTEAU, demands trial by jury on all issues so triable.

**Dated:** May 17, 2024.

    Respectfully submitted,

*/s/ Spencer Aronfeld*
**Spencer M. Aronfeld, Esq.**
Florida Bar No.: 905161
aronfeld@Aronfeld.com
**Matthias M. Hayashi**
Florida Bar No.: 115973
mhayashi@aronfeld.com
**Abby H. Ivey, Esq.**
Florida Bar No.: 1002774
aivey@aronfeld.com
**ARONFELD TRIAL LAWYERS**
One Alhambra Plaza, Penthouse
Coral Gables, Florida 33134
P:      (305) 441.0440
F:      (305) 441.0198
***Attorneys for CROTEAU***